UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOVANY FERNANDEZ PUERTO (A# 206-887-688),<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF CALIFORNIA CITY DETENTION FACILITY,<br><br>Respondent. | No. 1:26-cv-06445 TLN SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Petitioner has paid the required filing fee.

**I. Factual and Procedural History**

Petitioner is a citizen and native of Cuba who entered the United States at Hidalgo, Texas, on January 4, 2015. ECF No. 6-3 (Form I-213, Apr. 15, 2025). On the same date, immigration officials released him on parole for the purpose of deferred inspection until January 3, 2027. Id.

On April 25, 2025, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA" administratively charging him as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (noncitizen not in possession of valid entry document). Id. On January 28, 2026, local law enforcement arrested Petitioner for Driving Under the Influence. ECF No. 6-1 at

2 (Form I-213, Jan. 29, 2026); see also ECF No. 6-2 at 7 (FBI "rap sheet"). On or around April 22, 2026, Petitioner was transferred from the local jail to the custody of Immigration and Customs Enforcement ("ICE"). ECF No. 1 at 6; see also ECF No. 6-1 at 2-3. He is currently detained in the California City Detention Center within this judicial district. ECF No. 1 at 1.

Petitioner filed this petition on August 13, 2026, seeking his immediate release from detention with reasonable conditions of supervision. ECF No. 1 at 6-7. He explains that since his parole, he has received a work permit, regularly paid his taxes, and has an infant daughter whom he supports financially. Id. at 6. Respondent opposes the petition on grounds that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and does not possess a right to freedom from detention outside of that statute. ECF No. 6 (citing, *inter alia*, Jennings v. Rodriguez, 583 U.S. 281, 300 (2018), and Dep't of Homeland Security v. Thuraissigiam, 591 U.S. 103, 139 (2020)).

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why

the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment.").

The undersigned liberally construes the petition as mounting an as-applied, procedural due process challenge to the revocation of Petitioner's parole without pre-deprivation notice and hearing. See Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (courts must "construe *pro se* habeas filings liberally"). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

## III. Analysis

The undersigned agrees with Respondent that Petitioner appears subject to 8 U.S.C. § 1225(b) by virtue of his January 2015 application for entry at the Hidalgo, Texas, port of entry, deferred inspection, and subsequent release on parole. See Jennings, 583 U.S. at 287–88 ("Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." (quoting 8 U.S.C. § 1225(a)(3))).

However, as a parolee, Petitioner has a protected liberty interest in his continued freedom. See Morrissey, 408 U.S. at 482. Respondent's counterarguments based on Thuraissigiam and Jennings, respectively, are unavailing. Thuraissigiam is materially distinguishable in that it concerned an individual arrested mere yards from the border a short time after entering the United States without inspection, and who DHS had never released into the United States, not an individual like Petitioner who has established meaningful ties to the United States. See Padilla, 704 F. Supp. 3d at 1171-72 ("[Thuraissigiam's] discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question."); Sadeqi v. LaRose, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (interpreting Thuraissigiam as "circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*.") (emphasis in original). Moreover, the Supreme Court in Jennings addressed only whether periodic bond hearings are required under immigration statutes and remanded "to consider respondents' constitutional arguments on their merits . . . . in the first instance." 538 U.S. at 312.

Because Petitioner has a protected liberty interest in his continued freedom, Respondent owed him notice and a pre-deprivation hearing prior to the revocation of his order of recognizance. See Morrissey, 408 U.S. at 481. Respondent does not dispute that Petitioner did not receive such safeguards. Thus, upon consideration of the Mathews factors, the undersigned finds that Petitioner's re-arrest constitutes a procedural due process violation. See Julio Fernando R.P. v. Andrews, No. 1:26-CV-05547-TLN-CSK, 2026 WL 2137758, at *2 (E.D. Cal. July 24, 2026) (analyzing the Mathews factors and finding similarly).

The Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." Id. at 129. Here, Respondent does not make a specific argument as to why Petitioner's criminal history warrants only a post-deprivation remedy, the undersigned finds that release on the previous conditions of supervision are the appropriate remedy.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondent be ordered to immediately release Petitioner GEOVANY FERNANDEZ PUERTO (A# 206-887-688) from their custody under the conditions of supervision in place at the time of his re-arrest in April 2026 and to return all of Petitioner's documents and possessions at the time of release.

3. Respondent be directed to file a notice certifying compliance with the above provisions within three (3) days from the date of any final order requiring release.

4. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days of notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his re-detention is warranted.

5. The final order entered in this case not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

6. The Clerk of Court be directed to:

   a. Serve a copy of any release order on the California City Detention Facility; and,

   b. Enter judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 25, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE